## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI

### GREENVILLE DIVISION

| | | |
|---|---|---|
| **DENNIS BALLARD** ) | | |
| **DEXTER BROWN** ) | | |
| **CLARENCE CALVERT** ) | | |
| **KELVIN CARPENTER** ) | | |
| **EDDIE DEAN** ) | | |
| **HUBERT DEAN** ) | | |
| **ROBERT DEAN, Jr.,** ) | | |
| **GERRY GAMBLE,** ) | | |
| **ROBERT GREER** ) | | |
| **BILAL HAYNES,** ) | | |
| **RONNIE MOORE** ) | | |
| **REGIS WASH,** ) | | |
| **MARCUS WASH,** ) | | |
| **KENNIE WILLIAMS,** ) | | |
| ) | | |
| **Plaintiffs,** ) | **CIVIL ACTION** 4:23cv161-DMB-JMV | |
| ) | **COMPLAINT AND JURY** | |
| ) | **DEMAND** | |
| **v.** ) | | |
| ) | | |
| **WILLIAM J. "JERRY" NOBILE,** ) | | |
| **JERRY NOBILE FARMS, INC.,** ) | | |
| **WILLIAM J. "WILL" NOBILE JR.,** ) | | |
| **WILL NOBILE FARMS, INC.** ) | | |
| ) | | |
| **Defendants.** ) | | |

### COMPLAINT

### PRELIMINARY STATEMENT

1.      This is an action for damages resulting from unpaid wages, breach of contract,

and unlawful discrimination brought by fourteen Black American farmworkers who have been

systematically underpaid and denied job opportunities for years in favor of non-Black foreign

workers by their employers, William J. "Jerry" Nobile, Jerry Nobile Farms, Inc. ("JNF"),

William J. "Will" Nobile Jr., and Will Nobile Farms, Inc. ("WNF"), collectively "Defendants."

2.      While employing Plaintiffs as farmworkers, Defendants applied to the U.S.

government to hire workers under a foreign agricultural worker visa program to supplement their

labor force, claiming they could not find eligible U.S. workers to hire. After convincing the U.S.

government that they faced a shortage of U.S. workers, Defendants laid off or drastically reduced

the hours offered to Plaintiffs. Defendants then offered full time seasonal employment

opportunities to non-Black foreign workers. Further, Defendants paid the non-Black foreign

workers significantly more for performing the same or similar work that was performed by

Plaintiffs. Defendants' failure to pay Plaintiffs' wages and to offer them job opportunities at least

equal to their non-Black foreign workers is a violation of federal law and a breach of contract

that has resulted in substantial underpayments to and lost job opportunities for Plaintiffs.

3.      Plaintiffs bring this action to recover damages for the job opportunities unlawfully

denied them by Defendants, as well as additional wages due to them under federal law. Plaintiffs

seek punitive damages and injunctive relief to ensure that Defendants comply in the future with

federal laws and regulations that guarantee U.S. workers a hiring preference for available jobs in

this country and ensuring that the importation of foreign workers will not depress the wages of

domestic farmworkers in the area. Plaintiffs also bring claims under 42 U.S.C. §1981 for

discrimination based on race and/or alienage.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 29 U.S.C. § 1854 (the Migrant and

Seasonal Agricultural Worker Protection Act ("AWPA")); 28 U.S.C. § 1343(a)(4) (civil rights),

42 U.S.C. §§ 1981 and 1988 (equal rights under the law); and by 28 U.S.C. § 1331 (federal question).

5. This Court has supplemental jurisdiction over the claims arising under state and common law because these claims are so related to the federal claims that they form part of the same case or controversy.

6. Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because all Defendants and the majority of the Plaintiffs reside in this district, and the cause of action arose in this district.

## PARTIES

8. Plaintiffs Dennis Ballard, Dexter Brown, Clarence Calvert, Kelvin Carpenter, Eddie Dean, Hubert Dean, Robert Dean Jr., Gerry Gamble, Robert Greer, Bilal Haynes, Ronnie Moore, Marcus Wash, Regis Wash, and Kennie Williams are Black United States citizens. Plaintiffs reside, or previously resided, in or near Sunflower County, Mississippi. Each Plaintiff was employed by Defendants at various points between 2016 and the present to perform labor of a seasonal or temporary nature relating to the cultivation and harvesting of agricultural commodities produced for sale in interstate commerce.

9. Defendant Will Nobile Farms, Inc. ("WNF") is a Mississippi corporation that operates and maintains its principal address in Sunflower County, Mississippi.

10. Defendant Jerry Nobile Farms, Inc. ("JNF") is a Mississippi corporation that operates and maintains its principal address in Sunflower County, Mississippi.

11. The operations of Defendants WNF and JNF are interrelated. The two farms are collectively known as "Nobile Fish Farms." WNF and JNF share a business address, agricultural

- 3 -

equipment, and employees.  There is a centralized control of labor relations between WNF and JNF, and common management and financial control of the two farms. Collectively, WNF and JNF employ more than 15 employees who are employed for at least 20 weeks each year. WNF and JNF are jointly directed and controlled by Jerry Nobile and Will Nobile.

12.      Defendant William J. "Will" Nobile Jr. ("Will Nobile") is a natural person residing in Sunflower County, Mississippi. He is the owner of WNF, and the son of Defendant Jerry Nobile.

13.      Defendant William J. "Jerry" Nobile ("Jerry Nobile") is a natural person residing in Sunflower County, Mississippi. He is the owner of JNF, and the father of Defendant Will Nobile.

14.      At all times relevant to this action, Defendants operated farms in Sunflower County, Mississippi on which catfish and various crops, including soybeans and corn, were produced for sale in interstate commerce.

15.      At all times relevant to this action, Defendants employed migrant and seasonal agricultural workers to perform agricultural labor on the farm's operations.

16.      At various times between 2016 and the present, Defendants were employers of Plaintiffs within the meaning of the H-2A regulations, 20 C.F.R. § 655.103(b).

## STATUTORY AND REGULATORY FRAMEWORK

17.      An employer in the United States may import foreign workers to perform agricultural labor of a seasonal or temporary nature only if the U.S. Department of Labor ("DOL") certifies that there are insufficient available workers within the U.S. to perform the job and the employment of foreign workers will not adversely affect the wages and working

- 4 -

conditions of similarly-situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1188 (a)(1). Foreign workers admitted in this fashion are commonly referred to as "H-2A workers."

18. Agricultural employers seeking the admission of H-2A workers must first file a temporary labor certification application with DOL. 20 C.F.R. § 655.130. This application must include a job offer, commonly referred to as a "clearance order," complying with applicable regulations. This clearance order is used in the recruitment of both U.S. and H-2A workers and must offer to U.S. workers no less than the same benefits, wages, and working conditions the employer offers or provides to H-2A workers. 20 C.F.R. § 655.122(a).

19. Federal regulations establish the minimum benefits, wages, and working conditions that must be offered by the petitioning employer in order to ensure that U.S. workers are afforded a preference in hiring for the positions and that if foreign workers are admitted, they are employed at terms that do not adversely affect similarly-situated U.S. workers. 20 C.F. R. § 655.0(a)(1). To avoid an adverse effect on similarly-employed U.S. workers, the regulations mandate that the wages and job benefits provided to the employer's H-2A workers must also be extended to similarly-employed U.S. workers. 20 C.F.R. § 655.0(a)(3).

20. Among the specific terms required by the H-2A regulations are the following:

    a. The employer will contact its former U.S. workers employed during the previous year and solicit their return to the job. 20 C.F.R. § 655.153;

    b. The employer will pay all workers performing the activities described in the petition or otherwise performed by the H-2A workers at least the applicable adverse effect wage rate ("AEWR") for every hour or portion thereof worked during a pay period. 20 C.F.R. § 655.122(l);

  c. The employer will offer to U.S. workers no less than the same benefits, wages, and working conditions that are being provided to the H-2A workers. 20 C.F.R. § 655.122(a);

  d. The employer will provide employment to any qualified U.S. worker who applies to the employer until 50 percent of the H-2A workers' employment contract has expired. 20 C.F.R. § 655.135(d);

  e. The employer will keep accurate records showing for each workday the number of hours offered and the starting and finishing time. 20 C.F.R §655.122(j)(1);

  f. The employer will provide to each worker on or before payday a written statement listing, *inter alia*, the hours of employment offered and the employer's Federal Employer Identification Number, 20 C.F.R. § 655.122(k); and

  g. The employer will post and maintain in a conspicuous place at the jobsite a DOL poster setting out the rights and protections for workers under the H-2A program.  20 C.F.R. § 655.135(l).

21. The clearance order must include an attestation from the employer that it describes the actual terms and conditions of the proffered employment and contains all material terms and conditions of the job. 20 C.F.R. § 653.501(c)(3)(viii).

22. The H-2A regulations also mandate that prior to filing an application for temporary labor certification with the DOL, an employer desiring to participate in the program must engage in specific steps to positively recruit domestic workers. 20 C.F.R. § 655.135(c). In

recruiting U.S. workers, the employer is obligated to make the same kind and degree of effort as it does to obtain foreign workers. 20 C.F.R. § 655.154(b).

23. Positive recruitment steps include, among others, submitting a clearance order to the local state workforce agency (SWA) and contacting former workers through mail or other effective means. 20 C.F.R. §655.153. Before its temporary labor certification application can be approved, the employer must file a written recruitment report with the DOL listing all recruitment sources, identifying all U.S. workers referred and the results of the referral, and confirming that all former U.S. worker employees have been contacted and by which means. 20 C.F.R. § 655.156(a).

24. DOL determines whether an employer's H-2A temporary labor certification application should be approved based on various criteria, including the employer's compliance with the positive recruitment requirements set out in 20 C.F.R. § 655.153. 20 C.F.R. § 655.161.

25. Once an employer receives certification from DOL and hires H-2A workers, its clearance order becomes the job contract for both the foreign workers and any U.S. workers in corresponding employment, defined as domestic workers engaged in any work described in the clearance order or any agricultural work performed by the H-2A workers. 20 C.F.R. § 655.122(q); 20 C.F.R. § 655.103(b).

**STATEMENT OF FACTS**

26. Defendants farm several hundred acres in and near Sunflower County, Mississippi. Defendants' farms consist of catfish ponds, a catfish hatchery, and acreage of row crops, including soybeans and corn.

27. Defendants' farming operations are collectively known and referred to as "Nobile Fish Farms." Nobile Fish Farms conducts some or all operations through Jerry Nobile Farms,

Inc. (JNF) and Will Nobile Farms, Inc (WNF). The two corporations are managed, farmed, and operated as a unitary operation.

28.     Defendants jointly employ seasonal agricultural workers to assist in the planting, cultivation, harvest, and transport of Nobile Fish Farms' row crops and to assist with raising and harvesting catfish.

29.     Both Will and Jerry Nobile have the authority to hire and fire Nobile Fish Farm employees. Both Will and Jerry Nobile have authority to give job assignments and supervise all Nobile Fish Farm employees.

30.     On information and belief, Jerry Nobile owns the land on which Nobile Fish Farms, including both JNF and WNF, operates.

31.     Will Nobile has been the primary supervisor for most of the Plaintiffs. Will Nobile set their wages, told them when to come to work, supervised them at work, gave them their paychecks, and determined the amount of their annual bonus.

32.     Jerry Nobile was the primary supervisor for Plaintiff Eddie Dean. Mr. E. Dean was hired, supervised, and fired by Jerry Nobile. Other Plaintiffs occasionally received job assignments from Jerry Nobile, but their assignments were primarily given by Will Nobile.

33.     Sunflower County, where Defendants are located, is comprised predominantly of Black residents; as of the 2020 U.S. Census, Black or African American people made up an estimated 73.8% of the county's population.

34.     For decades prior to 2016, Nobile Fish Farms employed a majority Black workforce.

35.     In 2016, Defendants began employing temporary foreign workers from Mexico through the federal H-2A program to perform a portion of the work on the operations of Nobile

Fish Farms. Defendants have employed foreign H-2A workers from Mexico every year from 2016 through 2023.

36.     To obtain authorization for the admission of these foreign workers, Defendants annually sought and obtained temporary labor certification from DOL. This was effectuated through H-2A applications submitted on behalf of Nobile Fish Farms by WNF.  Although WNF was the employer listed on each application for temporary labor certification, Defendants intended to, and in fact did, employ the foreign workers to perform work throughout Nobile Fish Farms, on the operations designated as WNF and JNF.

37.     From 2016 through the present, Defendants have hired Florene C. Hardigree of Mendenhall, Mississippi, as their representative and agent to assist the farm in recruiting, soliciting, hiring, and furnishing seasonal labor.

38.     As Defendants' H-2A agent, Ms. Hardigree's responsibilities included preparing Defendants' application for temporary labor certification, including the clearance orders submitted with the H-2A applications; submitting the job offer to the Mississippi Department of Employment Security (MDES); preparing and submitting required petition documentation to DOL's Office of Foreign Labor Certification; consulting with the MDES, the DOL Office of Foreign Labor Certification, and with Defendants to arrange to screen and/or interview job applicants; and communicate with the above parties concerning all matters pertaining to the application for temporary labor certification.

39.     The clearance orders prepared by Ms. Hardigree were used by Defendants as part of the farm's positive recruitment requirements pursuant to 20 C.F.R. §§ 655.150 through 655.158 to recruit and solicit U.S. workers for the positions for which temporary foreign workers were being requested.

- 9 -

40.     Each of the H-2A applications filed on behalf of Nobile Fish Farms by WNF sought farmworkers for work beginning in either January, February, or March, and ending in November or December.

41.     Each of the H-2A applications filed on behalf of Nobile Fish Farms by WNF from at least 2019 through 2023 describe the work that would be done by the H-2A workers as follows:

> Drive tractors: prepare fields, plant, cultivate and harvest crops; unload and store seeds and supplies; haul seeds, fuel to field. Perform general farm labor jobs: maintenance on farm equipment (clean, oil, repair); repair fences; repair and clean farm buildings (sheds, barns, etc.); mow areas around buildings and keep clean and free from debris; seine ponds to harvest catfish. Feed fish check oxygen levels in pond, harvest fish from ponds and load onto trucks, wage in the pond to keep net mud line on bottom, repair spawning containers and position in brood ponds. Feel inside spawning container for fish or spawns. Remove spawns, move to the hatchery, prepare and place in hatching troughs. Monitor hatchery, clean hatching troughs, feed fry, disinfect hatching basket, transfer fry to nursery ponds, remove spawning containers and consolidate brood fish to holding ponds, feed fingerlings and brood fish. Work outside in heat and cold, work in 4'-6' water in catfish pond. Handle live fish. Performs typical farm and pond maintenance levee repair and maintenance, pull weeks, mow grass, clean and store equipment, etc. uses seines, dip nets, wagers, gloves uses oxygen meter and/or chemical test kit.

42.     In each of the H-2A applications it submitted on behalf of Nobile Fish Farms, WNF included a declaration, signed under the penalty of perjury by Will Nobile, that in employment of H-2A workers, the following conditions, among others, would apply:

> a.  The job opportunity would be open to any qualified U.S. worker without regard to race, color, national origin, age, sex, religion or handicap;
>
> b.  That on behalf of Nobile Fish Farms, WNF would conduct the required recruitment procedures (including those in 20 C.F.R. § 655.153);
>
> c.  That U.S. workers would be offered wages, benefits and job conditions no less than those being offered and provided to the H-2A workers;

- 10 -

    d.   That workers employed in corresponding employment would be paid at least the AEWR;

    e.   That no U.S. workers would be laid off except for lawful, job-related reasons; and

    f.   That the job opportunity would comply with the requirements of 20 C.F.R. § 655, Part B, including the provisions regarding recordkeeping, 20 C.F.R. § 655.122(j), wage statements, 20 C.F.R. § 655.122(k), worker employment contracts, 20 C.F.R § 655.122(q), and postings of worker rights under the H-2A program, 20 C.F.R. § 655.135(l).

43.    Upon receipt and following review of each of the H-2A applications filed on behalf of Nobile Fish Farms by WNF, DOL's Office of Foreign Labor Certification issued a notice of acceptance letter. Among other things, the notice of acceptance letters listed the positive recruitment steps Defendants needed to complete before the date that any foreign workers departed for the place of employment. Among these steps was a requirement pursuant to 20 C.F.R. § 655.153 that Defendants would make contact, by mail or other effective means, with former U.S. employees who were employed "in the occupation at the place of employment during the previous year and solicit their return to the job." The notice of acceptance letters also informed WNF of the need to submit to DOL a written recruitment report that included confirmation that former U.S. employees were contacted and the means used to contact them.

44.    Although Nobile Fish Farms employed U.S. workers each year from 2015 through 20223, including Plaintiffs, Defendants failed to contact any of these individuals regarding the job opportunities as described in the H-2A applications submitted on behalf of Nobile Fish Farms by WNF with respect to the 2016 through 2023 agricultural seasons.

Specifically, Defendants failed to recruit Plaintiffs for the full-time jobs paid at the AEWR offered to the Mexican H-2A workers, instead offering Plaintiffs only part-time work or less, at lower wages, for the same job duties.

45.    Based on the information contained in the H-2A applications on behalf of Nobile Fish Farms submitted by WNF, including the declarations and recruitment reports, the DOL granted the temporary labor certification applications seeking employment of foreign workers on the operations of Nobile Fish Farms with respect to each agricultural season from 2016 through 2023. Following these certifications, foreign workers from Mexico were recruited and hired to fill the positions described in the H-2A applications with respect to each of those agricultural seasons.

46.    In every year that they were employed on the operations of Nobile Fish Farms, the H-2A workers were compensated at a wage rate at least equal to the applicable Mississippi AEWR. These rates were as follows:

| | |
|---|---|
| **2016** | $10.69 per hour |
| **2017** | $10.38 per hour |
| **2018** | $10.73 per hour |
| **2019** | $11.33 per hour |
| **2020** | $11.83 per hour |
| **2021** | $11.88 per hour |
| **2022** | $12.45 per hour |
| **2023** | $13.67 per hour |

47.    With respect to each agricultural season from 2016 through 2023, and in accordance with the H-2A applications filed on behalf of Nobile Fish Farms by WNF, the

Mexican H-2A workers arrived at the jobsite between January and March to begin work for Defendants. Although the H-2A applications submitted on behalf of Nobile Fish Farms by WNF mentioned only work on the operations of WNF, the H-2A workers in fact worked in all sections of Nobile Fish Farms, including those designated as JNF.

48.     Defendants typically offered the Mexican H-2A workers 60-70 hours of work each week. Defendants offered the Mexican H-2A workers full-time employment for the duration of their work contracts.

49.     In contrast, after the Mexican H-2A workers arrived each season, Defendants reduced the number of hours offered to Plaintiffs and other Black U.S. workers. Throughout the duration of the H-2A contract, Plaintiffs were offered far fewer hours of work than the Mexican H-2A workers employed on the operations of Nobile Fish Farms. From approximately April through September each year, most Plaintiffs were offered little to no work.

50.     During the time they were employed by Defendants from 2016 through the present, Plaintiffs were assigned and performed tasks that were among those described in the H-2A applications submitted on behalf of Nobile Fish Farms by WNF.

51.     From 2016 through 2022, Defendants failed to compensate Plaintiffs at the same rate as they paid their Mexican H-2A workers for performing the same tasks. Instead, Defendants paid Plaintiffs at rates substantially below what they paid the Mexican H-2A workers for the same or similar work.

52.     Defendants failed to offer Plaintiffs the same benefits and job conditions as the Mexican H-2A workers employed on Nobile Fish Farms' operations. Defendants provided its Mexican H-2A workers with regular and full-time work. Defendants offered far fewer hours to

- 13 -

Plaintiffs and other Black U.S. employees engaged in corresponding employment on Nobile Fish Farms' operations.

53.     Plaintiff Dennis Ballard was employed by Defendants on the operations of Nobile Fish Farms as a seasonal agricultural worker from 2017 through 2021. Throughout this period, Mr. Ballard's job duties included those listed in the H-2A applications filed on behalf of Nobile Fish Farms by WNF with respect to those agricultural seasons. For his work on the operations of Nobile Fish Farms, Mr. Ballard was paid at a rate less than the applicable Mississippi AEWR. Each year, after the Mexican H-2A workers arrived to begin work on Nobile Fish Farms' operations, the amount of work offered to Mr. Ballard decreased and was substantially less than that offered to the H-2A workers. Throughout the periods during which the hours of work offered to him were decreased, Mr. Ballard was available, able, and willing to work the same number of hours as the H-2As.

54.     Plaintiff Dexter Brown was employed by Defendants on the operations of Nobile Fish Farms as a seasonal agricultural worker from approximately 2016 through 2023. Throughout this period, Mr. Brown's job duties included those listed in the H-2A applications filed on behalf of Nobile Fish Farms by WNF with respect to those agricultural seasons. For his work on the operations of Nobile Fish Farms, Mr. Brown was paid at a rate less than the applicable Mississippi AEWR, until partway through the 2023 season.  Each year, after the Mexican H-2A workers arrived to begin work on Nobile Fish Farms' operations, the amount of work offered to Mr. Brown decreased and was substantially less than that offered to the H-2A workers. Throughout the periods during which the hours of work offered to him were decreased, Mr. Brown was available, able, and willing to work the same number of hours as the H-2As.

- 14 -

55. Plaintiff Clarence Calvert was employed by Defendants on the operations of Nobile Fish Farms as a seasonal agricultural worker from 2010 through May 2023. From 2016 through 2023, Mr. Calvert's job duties included those listed in the H-2A applications filed on behalf of Nobile Fish Farms by WNF with respect to those agricultural seasons. For his work on the operations of Nobile Fish Farms, Mr. Calvert was paid at a rate less than the applicable Mississippi AEWR, until partway through the 2023 season. Each year, after the Mexican H-2A workers arrived to begin work on Nobile Fish Farms' operations, the amount of work offered to Mr. Calvert decreased and was substantially less than that offered to the H-2A workers. Throughout the periods during which the hours of work offered to him were decreased, Mr. Calvert was available, able, and willing to work the same number of hours as the H-2As.

56. Plaintiff Kelvin Carpenter was employed by Defendants on the operations of Nobile Fish Farms as a seasonal agricultural worker from 2020 through 2022. Mr. Carpenter's job duties included those listed in the H-2A applications filed on behalf of Nobile Fish Farms by WNF with respect to those agricultural seasons. For his work on the operations of Nobile Fish Farms, Mr. Carpenter was paid at a rate less than the applicable Mississippi AEWR. Each year, after the Mexican H-2A workers arrived to begin work on Nobile Fish Farms' operations, the amount of work offered to Mr. Carpenter decreased and was substantially less than that offered to the H-2A workers. Throughout the periods during which the hours of work offered to him were decreased, Mr. Carpenter was available, able, and willing to work the same number of hours as the H-2As.

57. Plaintiff Eddie Dean was employed by Defendants on the operations of Nobile Fish Farms as a seasonal agricultural worker in the spring of 2021. Mr. E. Dean's job duties included tasks that were listed in the H-2A application with respect to the 2021 agricultural

season filed on behalf of Nobile Fish Farms by WNF. For his work on the operations of Nobile

Fish Farms, Mr. Dean was paid at a rate less than the applicable Mississippi AEWR. After

working at Nobile Fish Farms for approximately two months, Mr. E. Dean was laid off for a

reason not related to his job performance and was not offered further employment opportunities

during that agricultural season. Following his dismissal, Mr. E. Dean remained available, able,

and willing to continue to perform his job duties at Nobile Fish Farms and to work the same

number of hours as the H-2As.

58.     Plaintiff Hubert Dean was employed by Defendants on the operations of Nobile

Fish Farms as a seasonal agricultural worker from approximately 1995 through April 2022. From

2016 on, Mr. H. Dean's job duties included tasks that were listed in the H-2A application filed

on behalf of Nobile Fish Farms by WNF with respect to those agricultural seasons. For his work

on the operations of Nobile Fish Farms, Mr. H. Dean was paid at a rate less than the applicable

Mississippi AEWR. Each year, after the Mexican H-2A workers arrived to begin work on Nobile

Fish Farms' operations, the amount of work offered to Mr. H. Dean decreased and was

substantially less than that offered to the H-2A workers. Throughout the periods during which

the hours of work offered to him were decreased, Mr. H. Dean was available, able, and willing to

work the same number of hours as the H-2As.

59.     Plaintiff Robert Dean Jr. was employed by Defendants on the operations of

Nobile Fish Farms as a seasonal agricultural worker from approximately 2016 through 2018.

Throughout this period, Mr. R. Dean's job duties included tasks that were listed in the H-2A

application filed on behalf of Nobile Fish Farms by WNF with respect to those agricultural

seasons. For his work on the operations of Nobile Fish Farms, Mr. R. Dean was paid at a rate

less than the applicable Mississippi AEWR. Each year, after the Mexican H-2A workers arrived

to begin work on Nobile Fish Farms' operations, the amount of work offered to Mr. R. Dean decreased and was substantially less than that offered to the H-2A workers. Throughout the periods during which the hours of work offered to him were decreased, Mr. R. Dean was available, able and willing to work the same number of hours as the H-2As.

60.     Plaintiff Gerry Gamble has been employed by Defendants on the operations of Nobile Fish Farms as a seasonal agricultural worker from approximately December 2022 through the present. Throughout this period, Mr. Gamble's job duties have included tasks that were listed in the H-2A application filed on behalf of Nobile Fish Farms by WNF with respect to the 2023 agricultural season. After the Mexican H-2A workers arrived in 2023 to begin work on Nobile Fish Farms' operations, the amount of work offered to Mr. Gamble decreased and was substantially less than that offered to the H-2A workers. During the period of time since the hours of work offered to him has decreased, Mr. Gamble has been available, able, and willing to work the same number of hours as the H-2As.

61.     Plaintiff Robert Greer has been employed by Defendants on the operations of Nobile Fish Farms as a seasonal agricultural worker from 1983 through the present. Throughout the period since January 2016, Mr. Greer's job duties have included tasks that were listed in the H-2A applications filed on behalf of Nobile Fish Farms by WNF with respect to those agricultural seasons. For his work on the operations of Nobile Fish Farms, Mr. Greer was paid at a rate less than the applicable Mississippi AEWR, until partway through the 2023 season. Beginning in 2016, after the Mexican H-2A workers arrived to begin work on Nobile Fish Farms' operations, the amount of work offered to Mr. Greer decreased and was substantially less than that offered to the H-2A workers. Throughout the periods during which the hours of work

offered to him were decreased, Mr. Greer was available, able, and willing to work the same number of hours as the H-2As.

62.     Plaintiff Bilal Haynes was employed by Defendants on the operations of Nobile Fish Farms as a seasonal agricultural worker from approximately 2016 through 2019. Throughout this period, Mr. Haynes's job duties included tasks that were listed in the H-2A applications filed on behalf of Nobile Fish Farms by WNF with respect to those agricultural seasons. For his work on the operations of Nobile Fish Farms, Mr. Greer was paid at a rate less than the applicable Mississippi AEWR. Each year, after the Mexican H-2A workers arrived to begin work on Nobile Fish Farms' operations, the amount of work offered to Mr. Haynes decreased and was substantially less than that offered to the H-2A workers. Throughout the periods during which the hours of work offered to him were decreased, Mr. Haynes was available, able, and willing to work the same number of hours as the H-2As.

63.     Plaintiff Ronnie Moore was employed by Defendants on the operations of Nobile Fish Farms as a seasonal agricultural worker from approximately January 2022 through October 2022. Mr. Moore's job duties included tasks that were listed in the H-2A application filed on behalf of Nobile Fish Farms by WNF with respect to the 2022 agricultural season. For his work on the operations of Nobile Fish Farms, Mr. Moore was paid at a rate less than the applicable Mississippi AEWR. After the Mexican H-2A workers arrived, the amount of work offered to Mr. Moore decreased and was substantially less than that offered to the H-2A workers.  Throughout the periods during which the hours of work offered to him were decreased, Mr. Moore was available, able, and willing to work the same number of hours as the H-2As.

64.     Plaintiff Marcus Wash was employed by Defendants on the operations of Nobile Fish Farms as a seasonal agricultural worker from 2005 through 2017. In 2016 and 2017, Mr. M.

- 18 -

Wash's job duties included tasks that were listed in the H-2A applications filed on behalf of Nobile Fish Farms by WNF with respect to those agricultural seasons. For his work on the operations of Nobile Fish Farms, Mr. M. Wash was paid at a rate less than the applicable Mississippi AEWR. In 2016 and 2017, after the Mexican H-2A workers arrived to begin work on Nobile Fish Farms' operations, the amount of work offered to Mr. M. Wash decreased and was substantially less than that offered to the H-2A workers. Throughout the periods in 2016 and 2017 during which the hours of work offered to him were decreased, Mr. M. Wash was available, able, and willing to work the same number of hours as the H-2As.

65.     Plaintiff Regis Wash was employed by Defendants on the operations of Nobile Fish Farms as a seasonal agricultural worker from 2008 through 2019. From 2016 through 2019, Mr. R. Wash's job duties included tasks that were listed in the H-2A applications filed on behalf of Nobile Fish Farms by WNF with respect to those agricultural seasons. For his work on the operations of Nobile Fish Farms, Mr. R. Wash was paid at a rate less than the applicable Mississippi AEWR. From 2016 through 2019, after the Mexican H-2A workers arrived to begin work on Nobile Fish Farms' operations, the amount of work offered to Mr. R. Wash decreased and was substantially less than that offered to the H-2A workers. Throughout the periods during which the hours of work offered to him were decreased, Mr. R. Wash was available, able, and willing to work the same number of hours as the H-2As.

66.     Plaintiff Kennie Williams was employed by Defendants on the operations of Nobile Fish Farms as a seasonal agricultural worker from 2016 through 2018. Throughout this period, Mr. William's job duties included tasks that were listed in the H-2A applications filed on behalf of Nobile Fish Farms by WNF. Mr. Williams was paid $7.50/hour in 2016 and $8.50 an hour in 2017 and 2018, well below the applicable Mississippi AEWR. Each year, after the

Mexican H-2A workers arrived to begin work at Nobile Fish Farms, the amount of work offered to Mr. Williams decreased and was substantially less than that offered to the H-2A workers. Throughout the periods during which the hours of work offered to him were decreased, Mr. Williams was available, able, and willing to work the same number of hours as the H-2As.

67.     At no time did Defendants display in a conspicuous place at Plaintiffs' worksite a DOL poster (Form WH 1376) notifying workers of their rights under the AWPA. Prior to the spring of 2023, Plaintiffs were unaware of their rights under the AWPA.

68.     At no time did Defendants display in a conspicuous place at Plaintiffs' worksite a DOL poster (Form WH 1491) notifying the workers of their rights under the H-2A program. Prior to the spring of 2023, Plaintiffs were unaware of their rights under the H-2A program and its implementing regulations.

69.     Defendants failed to keep records with respect to Plaintiffs' labor showing for each workday the hours of work offered, and the starting and finishing time.

70.     Plaintiffs were paid by check. The check stubs were the sole written statements provided Plaintiffs with respect to their hours worked, wages and other data required by the AWPA, 29 U.S.C. § 1821(d)(2), and its implementing regulations, 29 C.F.R. § 500.80(d). The wage statements did not show the hours offered or Defendants' Federal Employer Identification Number.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT (AWPA)

71. This count sets forth a claim by Plaintiffs against each Defendant for damages, injunctive relief and declaratory relief with respect to Defendants' violations of the AWPA and its attendant regulations during the agricultural seasons from 2016 through 2023.

72. Plaintiffs were employed by Defendants as seasonal agricultural workers within the meaning of the AWPA, 29 U.S.C.§ 1802(10)(A) at various times between 2016 and the present. During this period, Plaintiffs were engaged in corresponding employment with Nobile Fish Farms' H-2A workers within the meaning of the H-2A regulations, 20 C.F.R. § 655.103(b).

73. At all times relevant to this action, each Defendant was an agricultural employer within the meaning of the AWPA, 29 U.S.C. § 1802(2), in that each Defendant operated a farm and employed migrant or seasonal agricultural workers, including Plaintiffs.

74. Pursuant to 20 C.F.R. § 655.122(q), the H-2A applications submitted on behalf of Nobile Fish Farms by WNF and the accompanying clearance orders were binding work contracts between Plaintiffs and each Defendant during the periods encompassed in the H-2A applications and clearance orders.

75. Plaintiffs' work contracts, as embodied in the H-2A applications submitted on behalf of Nobile Fish Farms by WNF and the accompanying clearance orders, constituted working arrangements between Plaintiffs and each Defendant under the AWPA, 29 U.S.C. §§ 1822(c) and 1832(c).

76. In violation of the AWPA, 29 U.S.C. §§ 1822(c) and 1832(c), Defendants violated without justification the terms of their working arrangements with Plaintiffs, as embodied in the H-2A applications submitted on behalf of Nobile Fish Farms by WNF and the accompanying clearance orders. Among other things:

      a.  Defendants failed to pay Plaintiffs wages at least equal to the AEWR;

- 21 -

b. Defendants failed to offer and provide wages to Plaintiffs at least equal to those Defendants paid to their H-2A workers;

c. Defendants failed to offer Plaintiffs job opportunities at least equal to those that Defendants offered and provided to their H-2A workers.

d. Defendants failed to make the same kind and degree of effort to recruit U.S. workers as they did to obtain foreign workers.

e. Prior to the commencement of the agricultural season from 2016 through 2023, Defendants never notified Plaintiffs in writing or otherwise of the availability of the positions for which the farm had hired H-2A workers;

f. Defendants failed to display in a conspicuous place a DOL poster summarizing workers' rights under the H-2A program;

g. Defendants failed to keep payroll records showing the daily starting and stopping times of work and the daily hours offered; and

h. the wage statements provided to Plaintiffs lacked data regarding the hours offered and the employer's Federal Employer Identification Number.

77. In violation of the AWPA, 29 U.S.C. §§ 1821(b) and 1831(b), Defendants failed to display in a conspicuous location a DOL poster summarizing the rights and protections under the AWPA.

78. Defendants' violations of the AWPA were the natural result of their conscious and deliberate acts. These violations occurred as part of Defendants' regular business practices. Defendants' violations of the AWPA were intentional within the meaning of the Act, 29 U.S.C. §1854.

79. As a result of Defendants' violations of the AWPA as set out in this count, Plaintiffs have suffered damages, including unpaid wages due them at the AEWR and denial of job opportunities to which they were entitled as U.S. workers.

**SECOND CLAIM FOR RELIEF**
BREACH OF CONTRACT

80. This count sets forth a claim by Plaintiffs against all Defendants for damages with respect to Defendants' breach of employment contracts with Plaintiffs, as embodied in the H-2A applications submitted by WNF and resulting clearance orders.

81. In accordance with 20 C.F.R. § 655.122(q), the H-2A applications submitted on behalf of Nobile Fish Farms by WNF and accompanying clearance orders were the work contracts between Plaintiffs and all Defendants during the periods they were employed by Defendants from 2016 through the present.

82. Defendants breached its work contracts with Plaintiffs in several respects, including the following:

    a. Defendants failed to pay Plaintiffs wages at least equal to the AEWR;

    b. Defendants failed to offer and provide wages to Plaintiffs at least equal to those Defendants paid to their H-2A workers;

    c. Defendants failed to offer Plaintiffs job opportunities at least equal to those that Defendants offered and provided to their H-2A workers.

    d. Defendants failed to make the same kind and degree of effort to recruit U.S. workers, including Plaintiffs, as they did to obtain foreign workers;

- 23 -

e.  Prior to the commencement of the agricultural season from 2016 through 2023, Defendants never notified Plaintiffs in writing or otherwise of the availability of the positions for which the farm had hired H-2A workers; and

f.  Defendants failed to display in a conspicuous place a DOL poster summarizing workers' rights under the H-2A program.

83.  Plaintiffs did perform, or at all relevant times were ready, willing, and able to perform, but for Defendants' breaches, all their obligations under their employment contracts, as embodied in Defendants' H-2A applications and the accompanying clearance orders.

84.  Defendants' breach of these contract obligations has caused Plaintiffs economic damages.

**THIRD CLAIM FOR RELIEF**
VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1866
42 U.S.C. § 1981

85.  This count sets forth a claim by Plaintiffs against all Defendants for damages with respect to Defendants' discrimination on the basis of race and/or alienage, pursuant to 42 U.S.C. § 1981, originally enacted as part of the Civil Rights Act of 1866 and later amended by the Civil Rights Act of 1991.

86.  Defendants intentionally hired non-Black foreign workers to fulfill a substantial and increasing share of their labor needs and paid the non-Black foreign workers at higher rates than theirs long time Black U.S. workers, including Plaintiffs. Defendants failed to offer job opportunities to Plaintiffs, each of whom is a Black U.S. worker, equal to those job opportunities offered to Mexican H-2A workers. Between 2016 and 2023, Defendants largely reduced their Black workforce, including Plaintiffs, in favor of more non-Black foreign workers.

87.     Through the acts detailed in the Complaint, Defendants intentionally discriminated on the basis of race and/or alienage against Plaintiffs in their employment contracts by imposing discriminatory terms of employment and denying them the benefits, privileges, terms, and conditions of the contractual relationship.

88.     Defendants' actions violated Plaintiffs' rights to make and enforce contracts and receive full and equal benefit of the law as guaranteed by 42 U.S.C. § 1981.

89.     Defendants' conduct intentionally and impermissibly favored non-Black foreign workers over Plaintiffs in the making and enforcement of employment contracts and receiving full and equal benefit of the law in violation of 42 U.S.C. § 1981.

90.     As a direct result of Defendants actions, Plaintiffs were subjected to discriminatory terms and conditions of employment and have suffered substantial damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter an order:

a.  Declaring that Defendants violated the AWPA and its attendant regulations as set out in Plaintiffs' First Claim for Relief;

b.  Granting judgment in favor of Plaintiffs and against Defendants, jointly and severally, on Plaintiffs' claims under the AWPA set forth in their First Claim for Relief, and awarding each Plaintiff his actual damages or statutory damages of $500, whichever is greater, for every violation of the AWPA set forth in that count;

c.  Granting judgment in favor of Plaintiffs and against Defendants, jointly and severally, on Plaintiffs' breach of contract claims set forth in their Second Claim for Relief and awarding each of them his actual and compensatory damages;

- 25 -

d. Granting judgment in favor of Plaintiffs and against Defendants, jointly and severally, on Plaintiffs' discrimination claims set forth in their Third Claim for Relief and awarding each of them his actual and compensatory damages;

e. Awarding Plaintiffs punitive damages against Defendants, jointly and severally, with respect to Plaintiffs' breach of contract claims set forth in their Second Claim for Relief in an amount to be determined at trial;

f. Awarding Plaintiffs punitive damages against Defendants, jointly and severally, with respect to Plaintiffs' discrimination claims set forth in their Third Claim for Relief in an amount to be determined at trial;

g. Permanently enjoining Defendants from engaging in race and alienage discrimination and any other employment practice which discriminates on the basis of race and alienage;

h. Awarding Plaintiffs court costs, including discretionary costs;

i. Granting Plaintiffs an award of reasonable attorney's fees;

j. Awarding Plaintiffs pre- and post-judgment interest as allowed by law; and

k. Awarding Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

Respectfully submitted,


***/s/ Robert McDuff***
Robert McDuff, MS Bar No. 2532
MISSISSIPPI CENTER FOR JUSTICE
210 E. Capitol Street, Suite 1800
Jackson, MS 39201
Telephone: (601) 259-8484
Facsimile: (601) 352-4769
rmcduff@mscenterforjustice.org


Hannah M. Wolf, TN Bar No. 034349
*Pro Hac Vice Motion Forthcoming*
SOUTHERN MIGRANT LEGAL SERVICES
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd., Ste. 135
Nashville, TN 37217
Telephone: (615) 538-0725
hwolf@trla.org